16 F.3d 410
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Hugh S. HUNT, Plaintiff-Appellant,
v.
MARYLAND-NATIONAL CAPITAL PARK AND PLANNING COMMISSION,
Defendant-Appellee.
 No. 92-1707.
 United States Court of Appeals, Fourth Circuit.
 Argued: Feb. 3, 1993.
Decided: Jan. 14, 1994.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore; J. Frederick Motz, District Judge.
 Paula Fitzgerald Wolff, Potomac, MD, for appellant.
 Patricia P. Hines, Associate County Attorney, Rockville, MD, for appellee.
 Joyce R. Stern, County Atty., Joann Robertson, Sr. Asst. County Atty., Rockville, MD, for appellee.
 D.Md.
 AFFIRMED.
 Before RUSSELL and WILKINSON, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Hugh S. Hunt sued the Maryland-National Capital Park & Planning Commission ("Commission") claiming that the Commission had interfered with his contractual interests in real property located in a Potomac, Maryland subdivision. The district court dismissed Hunt's complaint because some of his allegations were barred by the statute of limitations and his other allegations failed to state a claim upon which relief could be granted. The district court denied Hunt's subsequent motions to amend or supplement the complaint, for reconsideration, to alter or amend judgment, for relief from judgment, and to join a co-defendant. We affirm the district court's rulings.
 
 I.
 
 2
 Hunt's complaint involves two option contracts for the sale of real property situated in a subdivision known as Lake Potomac. The first option contract (" '78 contract"), dated April 1978, offered Reliance Trusts ("Reliance") an opportunity to buy a piece of property referred to as the "Outlot" from Robert and Sheldon Blitz ("Blitz brothers"). Reliance subsequently assigned the '78 contract to Hunt. However, in August 1984, while the Blitz brothers remained the owners of the Outlot, they voluntarily dedicated a portion of the Outlot to the Commission without providing any notice to Reliance or Hunt.
 
 
 3
 The second option contract (" '86 contract") involved Lot 22, which was originally owned by the Blitz brothers. In 1980 the Blitz brothers entered into a contract with the Commission for the sale of Lot 22. The Commission never recorded this contract. Despite this prior sale, the Blitz brothers sold Lot 22 to Sundial Corporation, who sold the property to Ashdun Corporation ("Ashdun") in the summer of 1986. Immediately upon purchasing this real estate, Ashdun executed the '86 contract with Hunt which provided him with an option to purchase Lot 22. At the time Hunt signed the '86 contract, he had neither actual nor constructive knowledge of the Commission's prior contractual interest in Lot 22.
 
 
 4
 On July 2, 1986, Hunt attempted to exercise his option, under the '78 contract, to purchase the Outlot. It was on this date that Hunt learned that the Blitz brothers had dedicated a portion of the Outlot, which the '78 contract had represented as available for purchase, to the Commission.
 
 
 5
 Sometime before August 7, 1987, Hunt attempted to exercise his option with Ashdun pursuant to the '86 contract. The Commission then asserted its interest in Lot 22, basing its claim on the unrecorded land purchase contract. Ashdun filed suit in Maryland state court to clear title to Lot 22 in October 1987. In April 1990, Hunt attempted to intervene in Ashdun's suit but was ultimately unsuccessful. The Maryland circuit court ruled in Ashdun's favor on October 29, 1991, finding that the Commission's 1980 land purchase contract was not enforceable against Ashdun because Ashdun had no actual or constructive notice of the Commission's prior contractual interest.
 
 
 6
 In March 1990, the Subdivision Review Committee of the Commission reviewed and denied an application for resubdivision of Lot 22 submitted by Ashdun.
 
 
 7
 Hunt filed the instant action on May 10, 1991. Hunt's complaint alleged that the Commission tortiously interfered with his contractual interests in the Outlot and Lot 22 by accepting the Blitz brothers' dedication of a portion of the Outlot, asserting its contract rights in Lot 22, and denying Ashdun's application for resubdivision of Lot 22.
 
 
 8
 On March 6, 1992, the district court dismissed Hunt's complaint with prejudice. The court found that Maryland's statute of limitations barred Hunt's allegations regarding the '78 contract and that the allegations involving the '86 contract failed to state claims upon which relief could be granted.
 
 
 9
 Hunt filed motions to amend or supplement the complaint, for reconsideration, to alter or amend judgment, for relief from judgment, and to join a co-defendant. The district court denied all of these motions.
 
 
 10
 Hunt appeals the dismissal of his suit and the denial of the aforementioned motions.
 
 II.
 
 11
 Hunt first contends that the district court erred in holding that Maryland's three year statute of limitations for civil actions, Md. Cts. & Jud. Proc.Code Ann. Sec. 5-101 (Supp.1993), bars his claims for interference with the '78 contract.[1] Hunt makes three arguments supporting his contention: 1) the claims are based on a continuing pattern of behavior; 2) Hunt's attempted intervention in the state suit tolled the statute of limitations; and 3) the statute of limitations is not an absolute defense. We find each of these arguments to be without merit.
 
 
 12
 In Maryland, a civil cause of action accrues when the plaintiff "in fact knew or reasonably should have known of the wrong." Poffenberger v. Risser, 431 A.2d 677, 680 (Md.1981). Here, Hunt discovered the Commission's interference with the '78 contract on July 2, 1986 when he attempted to exercise his option to purchase the Outlot. Because Hunt filed his action in federal court on May 10, 1991, more than three years after his cause of action accrued, Maryland's statute of limitations bars his claim.
 
 
 13
 Hunt argues that the statute of limitations is not a bar because his claims are based upon a continuing pattern of behavior which allows him to file a complaint within three years of the last instance of alleged interference. Hunt, however, has alleged no such continuing pattern of behavior. Indeed, the conduct alleged by Hunt to have interfered with the '78 contract occurred in the late 1970's and early 1980's. We reject Hunt's argument that the Commission's alleged interference with the '78 contract continued into the early 1990's when it denied Ashdun's application to subdivide Lot 22 and opposed Ashdun's state court action to quiet title to Lot 22. These actions allegedly interfered with the '86 contract, not the '78 contract.
 
 
 14
 Hunt next argues that the statute of limitations does not bar his claims for tortious interference with the '78 contract because his attempted intervention in Ashdun's state court action to quiet title to Lot 22 tolled the statute. We reject this argument on the authority of Walko Corp. v. Burger Chef Systems, Inc., 378 A.2d 1100, 1104 (Md.1977) (holding that an unsuccessful motion to intervene will not toll the statute of limitations during the pendency of the motion to intervene).
 
 
 15
 Finally, Hunt argues that the statute of limitations does not bar his claims for tortious interference with the '78 contract because the statute is not an absolute defense. Specifically, Hunt contends that in instances such as his own, where one has notice that another objects to his actions, the statute of limitations does not apply. We reject this argument.
 
 
 16
 The Maryland Court of Appeals has stated that Maryland's statute of limitations "reflects a legislative judgment of what is deemed an adequate period of time in which 'a person of ordinary diligence' should bring his action." Walko, 378 A.2d at 1104. This regulation of when a claimant may bring an action shields potential defendants from stale claims. Id. at 1101. To benefit from this protection, the limitation period must be strictly interpreted. Walko, 378 A.2d at 1101-02. Thus, the fact that the Commission may have known that Hunt objected to its actions does not excuse Hunt's failure to exercise "ordinary diligence" and file a suit to preserve his rights to redress.
 
 
 17
 Accordingly, we find that the district court properly dismissed Hunt's claims for tortious interference with the '78 contract as barred by the statute of limitations.
 
 III.
 
 18
 Hunt argues that the district court erred in dismissing his claims regarding the '86 contract for failure to state a claim upon which relief could be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). We review de novo the district court's dismissal of these claims. Schatz v. Rosenberg, 943 F.2d 485, 489 (4th Cir.1991), cert. denied, 112 S.Ct. 1475. In reviewing the legal sufficiency of Hunt's claims, we construe the factual allegations in the light most favorable to Hunt. Id. We will affirm the district court's dismissal if it appears that Hunt is not entitled to relief under any facts that could be proved in support of his claims. Id.
 
 
 19
 Under Maryland law, a complaint states a claim for tortious interference with contract when it alleges that "a third party ... without legal justification, intentionally interferes with the rights of a party to a contract, or induces a breach thereof...." Wilmington Trust Co. v. Clark, 424 A.2d 744, 754 (Md.1981); accord Winternitz v. Summit Hills, 532 A.2d 1089, 1093 (Md. Ct. Spec.App.1987), cert. denied, 538 A.2d 778 (Md.1988); Orfanos v. Athenian, Inc., 505 A.2d 131, 138 (Md. Ct. Spec.App.1986). Hunt argues that the allegations in his complaint regarding the Commission's assertion of its rights under the 1980 land purchase contract, and the Commission's denial of Ashdun's resubdivision plan constitute grounds for a claim of tortious interference.
 
 
 20
 We find Hunt's argument to be without merit. First, the Commission's attempt to enforce its rights under the 1980 land purchase contract was not "without legal justification." Indeed, the Commission had every right to seek to retain real estate in which it held colorable title. Second, the Commission's denial of Ashdun's resubdivision plan in no way affected the validity of or interfered with the option contract between Hunt and Ashdun. In light of the facts alleged, we find that Hunt has failed to state a claim upon which relief can be granted. We therefore affirm the district court's dismissal of Hunt's claims regarding the '86 contract.[2]
 
 IV.
 
 21
 After the district court dismissed his action, Hunt filed a motion, pursuant to Fed.R.Civ.P. 15(a), to amend his complaint. The district court denied Hunt's motion. We review the district court's ruling for an abuse of discretion. Foman v. Davis, 371 U.S. 178, 182 (1962); Keller v. Prince George's County, 923 F.2d 30, 33 (4th Cir.1991). In this case, we find that the district court did not abuse its discretion in denying Hunt's motion because permitting an amendment would have been an exercise in futility, Foman, 371 U.S. at 182, as the undisputed facts leave no room for any amendment to state a valid claim for tortious interference.[3]
 
 V.
 
 22
 For the foregoing reasons, we affirm the district court's dismissal of Hunt's action and denial of Hunt's motions subsequent to dismissal.
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 Because this is a diversity action brought pursuant to 28 U.S.C. Sec. 1332, we apply Maryland law concerning the applicable statute of limitations. Guaranty Trust Co. v. York, 326 U.S. 99, 110 (1945); Mills v. International Harvester Co., 554 F.Supp. 611, 612 (D. Md.1982)
 
 
 [2]
 Hunt contends that the district court, upon determining that his complaint failed to state a claim regarding the '86 contract, erred in dismissing his action with prejudice. We disagree. The decision to dismiss with prejudice is a harsh sanction, but the choice lies within the discretionary power of the district court and will not be reversed absent an abuse of that discretion. Craighead v. E.F. Hutton & Co., Inc., 899 F.2d 485, 495 (6th Cir.1990). Here, it is clear that there is no set of facts by which Hunt could establish, even by amendment, a valid claim for tortious interference. Thus, despite the severity of the district court's ruling, it was not an abuse of the court's discretion to dismiss Hunt's complaint with prejudice
 
 
 [3]
 Hunt also filed motions for reconsideration, to alter or amend judgment, for relief from judgment and to join a co-defendant. We have considered Hunt's appeal from the district court's denial of these motions and find it to be without merit